ELLIE C. BUTNER v. A. L. WHITLOW.

(Filed 9 December, 1931.)

1. **Highways B h—Evidence that skidding resulted from inattention to road held sufficient evidence of negligence to be submitted to jury.**

   While the skidding of an automobile upon a highway is not sufficient to apply the doctrine of *res ipsa loquitur*, where there is evidence in an action to recover damages for an injury resulting from the alleged negligence of the driver, that the driver was inattentive to the road and talking to a companion on the seat with him or looking within the automobile instead of on the road ahead, and that the skidding was caused by a sudden turn of the wheel when he found himself on the edge of the hard surface, it is sufficient to be submitted to the jury on the issue of negligence.

2. **Highways B k—Held: Plaintiff was mere guest in automobile without control over driver, and driver was liable to her for negligent injury.**

   Where an injury is sustained by the plaintiff while riding in an automobile driven by her brother-in-law on a trip to take the plaintiff's niece, the driver's daughter, to a sanatorium at which the plaintiff was to pay her expenses, the driver may not escape liability for his negligent act causing injury to the plaintiff on the ground that at the time of the injury they were engaged in a common enterprise, when the evidence discloses that the plaintiff had no control or authority over the driver in the operation of the car, and that he was not her agent in its operation.

3. **Appeal and Error J b—Motion for mistrial was addressed to discretion of trial court and his ruling is not reviewable on appeal.**

   In an action to recover damages for injuries sustained in an automobile accident the plaintiff's counsel asked the defendant on cross-examination "Did the finance people or the insurance company take your automobile?" The question was stricken out upon objection and defendant moved for a mistrial, the court refused the motion and the defendant appealed. *Held:* the trial court's ruling will not be reviewed on appeal or a new trial granted in the absence of evidence that the defendant was prejudiced by the asking of the question.

APPEAL by defendant from *Oglesby, J.,* at September Term, 1931, of FORSYTH. Affirmed.

This is an action to recover damages for personal injuries resulting from the negligent operation by the defendant of an automobile in which plaintiff was riding. The action was begun and tried in the Forsyth County Court. The issues submitted to the jury at the trial were answered as follows:

"1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.

2. What damages, if any, is the plaintiff entitled to recover of the defendant? Answer: $3,000."

From judgment on the verdict, defendant appealed to the judge of the Superior Court of Forsyth County, assigning errors at the trial.

At the hearing of the appeal, defendant's assignments of error were overruled and the judgment of the county court affirmed. Defendant appealed to the Supreme Court.

*Manly, Hendren & Womble for plaintiff.*
*McMichael & McMichael for defendant.*

CONNOR, J. On 18 January, 1928, plaintiff was riding in an automobile owned and driven by the defendant on the State Highway between High Point and Asheboro. She was sitting on the rear seat, with her niece and her niece's husband. Defendant, with his wife and son, was on the front seat. Plaintiff is the sister-in-law of the defendant. The party left Winston-Salem at about 7 o'clock a.m., and was going to Southern Pines, N. C., where plaintiff's niece was to enter a sanatorium for treatment.

Plaintiff testified as follows: "It was a little cloudy and just a little bit foggy when we left Winston-Salem that morning. When we got to High Point it began to rain. Mr. Whitlow was driving the car at the time we had the accident. We had passed High Point and were on the road to Asheboro. I just remember seeing the wheel shaking like that (indicating) and that is about all I know. The automobile left the road and ran into a side ditch. That is the last I remember until the automobile righted itself over in the field. We were traveling on a hard-surfaced road, and were on a slight curve. The automobile left the road and stopped in a field—about ten feet beyond the ditch. When the car stopped I just remember looking over to see if my little niece was all right. We were all still in the automobile."

J. L. Ryan, the husband of plaintiff's niece, testified as follows: "Mr. and Mrs. Whitlow and their son were on the front seat. Miss Butner, Mrs. Ryan and I were on the rear seat. When we left Winston-Salem, it was foggy, and after we got to High Point it commenced drizzling rain, and it continued to rain until we got about seven miles this side of Asheboro. There we had the accident. Prior to the accident I did not notice particularly anything about Mr. Whitlow's driving the automobile. Immediately preceding the accident, I was sitting in the rear seat, looking straight ahead. The road was wet. It had been dusty. At the place of the accident there was a curve to the left of the road. I was watching Mr. Whitlow's driving, and just before the accident happened, he was looking to the right, talking to Mrs. Whitlow, and glancing down at the floor of the automobile. While he was doing

this, the automobile eased over almost to the edge of the hard surface on the left. When Mr. Whitlow looked back and saw that the automobile was almost off the road, he pulled the steering wheel around to the right. As he did that, because of the condition of the road, the automobile skidded. Mr. Whitlow tried to right the automobile, made two or three twists of the wheel, and then put on the brakes. While he was trying to right the automobile, it was going from one side of the road to the other. You could feel the automobile whirl. When he turned it sharp around to the right, the automobile went over on the right-hand side of the shoulder, and hit the embankment. The automobile took a nose dive and turned completely over in the field. When it stopped, it was in an upright position. All the passengers stayed in the automobile. At the time of the accident, Mr. Whitlow was driving at a speed of 35 to 40 miles per hour."

There was evidence tending to show that as the result of the accident, plaintiff sustained painful and serious injuries. She was unable to perform her duties as a bookkeeper in the employment of the Forsyth Roller Mills for several months. She paid out large sums of money for medical and hospital bills. At the trial she testified as follows: "My condition now is quite different from what it was before I was hurt. I suffer with my arm and shoulder most all the time, just a dull ache, especially if I over-do myself, or get nervous. My nerves are much worse than they were before the accident."

The evidence at the trial of this action in the county court was properly submitted to the jury, as tending to show that the skidding of the automobile, in which plaintiff was riding, was caused by its negligent operation by the defendant. The mere fact that the automobile skidded was not in itself evidence of negligence on the part of the defendant, but there was evidence from which the jury could find that the skidding was caused by his negligent driving of the automobile. For this reason it was not error for the judge of the Superior Court to overrule defendant's assignment of error based on his exception to the refusal of the judge of the county court to allow his motion for judgment as of nonsuit. *Springs v. Doll,* 197 N. C., 240, 148 S. E., 251. See *Lenden v. Miller,* 172 Wis., 20, 177 N. W., 909, 12 A. L. R., 665. It was held in that case that the rule *res ipsa loquitur* does not apply to the mere skidding of an automobile on a slippery pavement. So it was held in *Klein v. Beeten,* 169 Wis., 385, 172 N. W., 736, 5 A. L. R., 1237, that where an automobile, running on a perfectly smooth road, suddenly turns and runs into a gutter, overturning and killing an occupant, the doctrine is inapplicable. The skidding of an automobile, while being driven on a road or highway, may or may not be due to the fault of the

driver. It is only when it was due to the fault of the driver, as the evidence in the instant case tended to show, that the driver can be held liable for damages resulting therefrom.

Upon the facts shown by all the evidence in this case, the liability of the defendant to the plaintiff was not affected by her relationship to him as the owner and driver of the automobile in which she was riding, and it was therefore immaterial whether she was his guest, or whether she and he were engaged in a joint adventure in the operation of the automobile. Plaintiff had made arrangements for the admission of her niece into a sanatorium at Southern Pines as a patient, and had undertaken to pay all her expenses while at the sanatorium; defendant had undertaken to take the niece of plaintiff, who is his daughter, in his automobile from her home in Winston-Salem to Southern Pines. Plaintiff was not a member of the defendant's family. She is the sister of his first wife, and the aunt of his daughter by his first wife. The defendant was not driving the automobile as the agent of the plaintiff, nor did plaintiff have any control of the operation of the automobile. There is no principle of law upon which the negligence of the defendant in the operation of the automobile can be imputed to plaintiff, with the result that defendant is absolved from liability to her for damages caused by his negligence. See *Schwartz v. Johnson,* 152 Tenn., 586, 280 N. W., 32, 47 A. L. R., 323. In that case it is held that there is no joint adventure between the driver of an automobile and one who is merely his guest, which will prevent the guest from recovering damages for injuries due to the driver's negligence. It is also held that in a joint adventure, in order to impute the negligence of one of the parties to the other, each must have authority to control the means or agencies employed to execute the common purpose. There was no error in the refusal of the judge of the Superior Court to sustain defendant's assignment of error based upon his exception to the refusal of the judge of the county court to submit the issue tendered by the defendant involving the defense set up in the answer with respect to joint adventure.

At the trial counsel appearing for the defendant objected to a question addressed to the defendant on his cross-examination as follows: "Did the finance people take your automobile or did the insurance company take it?" The objection was sustained. Counsel then moved for a mistrial because this question had been asked by counsel for plaintiff. The motion was denied, and defendant excepted. This motion was addressed to the discretion of the trial court. In the absence of any evidence in the record showing that defendant was prejudiced by the asking of the question, the ruling of the trial judge on defendant's motion for a mistrial will not be reviewed on his appeal. *Goss v. Williams,* 196 N. C.,

213 at page 223, 145 S. E., 169; *Fulcher v. Lumber Co.*, 191 N. C., 408, 132 S. E., 9. Counsel who asked the question insisted that he did so in good faith, not for the purpose of suggesting to the jury that defendant was insured against loss by reason of his liability to plaintiff in this action, but for the purpose of off-setting the effect on the jury of defendant's statement on his direct examination that the finance people took his car after the accident. The trial judge evidently found that the question was asked in good faith, although he properly sustained defendant's objection to the question, and did not permit defendant to answer it.

We find no error in the judgment of the Superior Court affirming the judgment of the county court. The judgment is, therefore,

Affirmed.